# JOHN LAMB

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa September 22, 1880.*

96    73
139   150
96    73
97a  ⁴523
96    73
204  ⁵238
96    73
j110aᵈ295

1.  INSTRUCTIONS—*depending on the evidence.* The propriety of giving or refusing an instruction must always be determined by the facts established in the particular case. *Hence,* it often happens that a particular instruction, entirely proper in one case, would be erroneous in another in many respects like it, by reason of some additional element entering into the latter.

2.  A party on trial for an alleged crime, who has introduced evidence tending to establish a given theory in his defence, which is good if proven, is entitled to have the jury instructed as to the law applicable to the state of facts his evidence tends to prove.

3.  CRIMINAL LAW—*responsibility for act of another—of the assent required.* It may be stated as a general proposition that no one can be properly convicted of a crime to the commission of which he has never expressly or impliedly given his assent.

4.  Where the accused was present and committed the crime with his own hands, or aided and abetted another in its commission, he will be considered as having expressly assented thereto. So, where he has entered into a conspiracy with others to commit a felony, or other offence, under such circumstances as will, when tested by experience, probably result in the unlawful taking of human life, he will be presumed to have understood the consequences which might reasonably have been expected to follow from carrying into effect the purpose of the unlawful combination, and also to have assented to the doing of whatever would reasonably or probably be necessary to accomplish the objects of the conspiracy, even to the taking of life. But further than this the law does not go.

5.  If the accused in such case has not expressly assented to the commission of the crime which happened to be the result of attempting to carry into effect the purpose of the conspiracy, and the unlawful enterprise was not of such character as would probably involve the necessity of taking life in carrying it into execution, then there can be no implied assent, and consequently no criminal liability for the unexpected result.

6.  SAME—*act of one conspirator chargeable upon all.* If the unlawful act agreed to be done is dangerous or homicidal in its character, or if its accomplishment will necessarily or probably require the use of force and violence which may result in the taking of life unlawfully, every party to such agreement will be held criminally liable for whatever any of his co-conspirators may do in furtherance of the common design, whether he is present or not.

74        LAMB *v.* THE PEOPLE.        [Sept

Statement of the case.    Brief for Plaintiff in Error.

7. But where the unlawful act agreed to be done is not of a dangerous or homicidal character, and its accomplishment does not necessarily or probably require the use of force and violence which may result in the taking of life unlawfully, no such criminal liability will attach merely from being a party to such an agreement.

8. If a person, a party to an agreement to commit a burglary and steal goods from a store and conceal the same for disposition, who was not present at the time others of the conspirators were unloading and depositing the stolen goods at a pawnbroker's shop, when upon being accosted by a police officer some one of the persons who were present at such unloading and depositing, shot and killed the officer, the co-conspirator who was absent at the time of the killing, not having aided or abetted, advised or encouraged the homicide, nor, before its commission, advised the persons in charge of the stolen goods to oppose and resist any and all persons who should attempt to seize the same, or interrupt them in secreting or disposing of the goods will not be liable criminally for the homicide.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

On the second day of November, 1878, John Lamb and George Freeman were indicted in the Criminal Court of Cook county for the murder of Albert Race, a police officer of Chicago.

At the March term, 1879, of that court Lamb alone was put upon his trial. The jury by their verdict found him guilty of the charge, and directed the infliction of the death penalty. A motion for a new trial having been made and overruled, final sentence and judgment were pronounced by the court in pursuance of the verdict. Lamb, by writ of error, brings the record of the proceedings in the cause to this court for review.

Messrs. VAN ARMAN & GORDON, and Mr. WILLIAM S. FORREST, for the plaintiff in error:

There can be no pretence that a person not actually or constructively present at the homicide could be a principal in the murder. A person, to be present constructively, must take some part in the homicide,—as, for example, to keep watch and guard against interruption,—and if thus employed, no

matter at what distance, he is constructively present. But the testimony offered by defendant, especially of those witnesses who testified to an alibi, tended to show that the defendant was neither constructively nor actually present. Hence it became necessary to instruct the jury as to the law applicable to the case, upon the assumption that defendant was neither actually nor constructively present at the homicide; and, therefore, defendant's counsel asked instructions numbered 6 and 8. The rejection of these instructions by the court is tantamount to a refusal to admit or recognize any exception or qualification of the rule of liability stated in the instructions given for the prosecution, based upon the nature of the wrongful act contemplated by the supposed conspirators.

Under the instructions as given, the jury were informed that the defendant by uniting with others in the design of removing stolen property for the purpose of secreting or depositing the same, without any intention of taking human life, or doing or assenting to the doing of any act tending to the destruction of human life, might render himself guilty of a homicide wilfully and intentionally perpetrated by another.

If a man perform an act which, in its nature and probable results, would be likely to prove fatal to human life, and such act results in the destruction of human life, even when no particular malice appears, he is guilty of murder.

On the same principle, if a man conspires or agrees with another to commit any act which may probably cause the destruction of human life, and the act is performed by the other with whom he conspired, in the same manner substantially as intended, and death ensues, both are guilty of murder, because the act which caused the death was consented to by both.

The assent and agreement of two or more persons to do an illegal act, which in its ordinary mode of performance is not likely to cause or involve the destruction of human life, can not involve one of the persons so assenting in the guilt of a

homicide perpetrated by the other in the performance of the act so agreed upon, even if such homicide was committed in the performance of the illegal act so originally intended.

Now, the removal and concealment of stolen goods have no natural or probable tendency to the destruction of human life. It is true, a man may be killed in the performance of such an act, and the same is true of a thousand other acts, lawful as well as unlawful; but there is no natural tendency in the act itself to endanger human life.

Certainly no court can assume, as a matter of which they can take judicial notice, that in the given instance the act of removing the goods in question to the place, and in the manner contemplated, was dangerous to human life; and yet the court in effect instructed the jury that if the homicide of Race was committed in the course of the performance of any unlawful act, to which the defendant had acceded and consented, he was guilty of the murder. The following authorities are cited in support of the positions above assumed: 3 Greenleaf Par. 138 and 44; *Rex* v. *Culkin,* 5 C. & P. 121; 1 Hale P. C. 617; 2 Hawkins' P. C. chap. 29, sec 19; 2 Hawkins's P. C. chap. 29, secs. 20, 21; 1 Arch. Cr. Pl. ch. 1, p. 65; Foster 351, 352, 369, 370, 371, 372; *Moody* v. *The State,* 6 Coldwell, 299; *Reg.* v. *Lee,* 4 F. & F. p. 63 and notes; *R.* v. *Horsey,* 3 F. & F. p. 287 and notes; *Reg.* v. *Franz,* 2 F. & F. 580 and notes; *Reg.* v. *Luck,* 3 F. &. F. 483, and notes; Roscoe's Crim. Ev. 713; *R.* v. *Duffey,* 1 Lewin C. C. 194; *Reg.* v. *Skeet et al.* 4 F. & F. 931 and notes; *Watts* v. *The State,* 5 W. Va. 532; *The People* v. *Knapp,* 56 Mich. 112; *Reg.* v. *Turner et al.* 4 F. & F. 339; 1 Russell on Crimes, (Greaves Ed.) pp. 743, 744; *Rex* v. *Hawkins,* 3 C. & P. 392 and note *a; Rex* v. *Collison,* 4 C. P. 565; *Reg.* v. *Howell,* 9 C. & P. 435; 4 Blackstone's Com. p. 37, (Sharswood & Cooley's Ed.) and notes; Rules to determine responsibility, Bishop Cr. L. vol. 1, Par. 641, 6th Ed.

Mr. LUTHER LAFLIN MILLS, State's attorney, and Mr. E. P. WEBER, assistant State's attorney, for the People:

We insist this judgment ought not to be disturbed, for the reasons following:

First, the evidence in this case shows that John Lamb, George Freeman, Philo Durphey, Charles Dennis, James Griffin and James Driscoll formed and entered into a conspiracy to burglarize the store of E. S. Jaffray & Co., and to deliver the burglariously stolen property to Lesser Freidberg, at No. 474 State street, and that it was in the carrying out of this conspiracy that Albert Race was murdered.

Now, while it is true that George Freeman is an accomplice, and that therefore his testimony should be closely scanned and scrutinized, yet it by no means follows that this judgment should be set aside, even if the verdict was based upon his sole uncorroborated evidence. On the contrary, the rule of law in this State is as stated by this court in the cases of *Gray et al.* v. *The People,* 26 Ill. 347, and *Earll* v. *The People,* 73 id. 334.

As to the jury being the judges of the weight of the evidence, and to show that it is not the province of the court to instruct as to the weight of evidence or the credibility of a witness, counsel cite *Gray et al.* v. *The People,* 26 Ill. 348, *Shaw* v. *The People,* 81 id. 152, *Martin* v. *The People,* 54 id. 226, *Otmer* v. *The People,* 76 id. 152, *Chittenden* v. *Evans,* 41 id. 251, and *Kelley* v. *The People,* 29 id. 289.

As to granting a new trial in a criminal case, counsel cite *Connelly* v. *The People,* 81 Ill. 380, *Falk* v. *The People,* 42 id. 336, and *Peri* v. *The People,* 65 id. 24.

On the same and the preceding point, counsel cite *Roach et al.* v. *The People,* 77 Ill. 31, *Sucher* v. *Otto,* 86 id. 161, *Hayes* v. *Houston,* 86 id. 487, *Cochran* v. *Ammonux,* 16 id. 316, *Eldredge* v. *Huntington,* 2 Scam. 235, *Leigh* v. *Hodges,* 3 Scam. 15, *Gillett* v. *Sweet,* 1 Gilm. 475, *Elam* v. *Badger,* 23 Ill. 448, *Dishon* v. *Schorr,* 19 id. 59, *Schultz* v. *Lepage,* 21 id. 160, *Boynton* v. *Phelps,* 52 id. 210, *O'Reilly* v. *Fitzgerald,* 40

id. 310, *Schwarz* v. *Schwarz,* 26 id. 81, *Hall* v. *Groufe,* 52 id. 421, *Powlay* v. *Hughes,* 40 id. 316, *Allen* v. *Smith,* 3 Scam. 97, *Ellis* v. *Locke,* 2 Gilm. 459, *Evans* v. *Fisher,* 5 id. 572, *Daws* v. *Robbins,* id. 72, *Mann* v. *Russell,* 11 Ill. 586, *Welden* v. *Francis,* 12 id. 460, and section 458, chap. 38, Rev. Stat. 1874.

From the foregoing decisions we deduce the following well established rules of law, which must obtain and be of force in the consideration and determination of this cause by this court:

1st. That a conviction upon the sole, uncorroborated testimony of an accomplice is valid and must stand.

2d. That when evidence is produced to corroborate an accomplice, the question as to whether such evidence is satisfactory or not is one purely for the jury to determine.

3d. That the question as to what degree of credibility shall be accorded to a witness, is exclusively for the jury to determine.

4th. That the jury have the right to believe and rely upon the evidence of an impeached witness, when that witness is corroborated by any other facts, circumstances or testimony.

5th. That it is the exclusive province of the jury to determine, not only the degree of credibility to be accorded to witnesses, but also to determine the weight of the evidence.

6th. That where evidence is conflicting, inconsistent and irreconcilable, it is for the jury to weigh and consider the whole evidence, and to decide the question in issue, which decision can not be questioned in this court upon the ground that the jury were mistaken.

7th. That this court will not interfere in a capital case, upon the questions of fact, unless it clearly appears that the verdict is against the whole evidence, and that substantial justice has not been done, and there is strong reasonable doubt as to the guilt of defendant of the crime of which he stands convicted.

If several persons conspire to do an unlawful act and death happens in the prosecution of the common object, all are alike guilty of the homicide; the act of one of them, done in furtherance of the original design is, in consideration of law, the act of all, and he who advises or encourages another to do an illegal act is responsible for all the natural and probable consequences that may arise from its perpetration. *Brennan et al.* v. *The People*, 15 Ill. 516; 2 Hawk. P. C. ch. 29; 1 Hale P. C. ch. 34; 1 Russell on Crimes, 24; 1 Chitty Criminal Law, 264; *Campbell* v. *The People*, 16 Ill. 17; *Hanna* v. *The People*, 86 id. 283; *Regina* v. *Jackson et al.* 7 Cox.

If two or more persons conspire to commit a felony, etc., and in the prosecution of that common design, one of them commits murder, it is murder in all who enter with or take part in the execution of the common design for which they combined together. *Miller* v. *State*, 25 Wis. 389; *State* v. *Shelledy*, 8 Clark (Ia.) 477; *Com.* v. *Campbell*, 7 Allen, 541; *Stipp* v. *State*, 11 Ind. 62; *Com.* v. *Daly*, 4 Penn. L. J. 157; *Com.* v. *Hare*, id. 261; *Huling* v. *State*, 17 Ohio St. 583; *Reg.* v. *Howell*, 9 Car. & P. 437; 2 Whart. Cr. L. sec. 998, etc.; *Moody* v. *The State*, 6 Coldwell, 305; *State* v. *Simmons*, 6 Jones' Law (N. C.) 24; *Reg.* v. *Sheppard*, 9 Car. & P. 121; *Rex* v. *Edwards*, 3 id. 390; *Rex* v. *Hawkins*, id. 341 and note; *United States* v. *Ross*, 1 Gal. 628; Foster, 334, 350; 1 East P. C. 259, 255, 258; 1 Hale P. C. 433, 444.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

It appears from the record in this case, that on the evening of the fourth of October, 1878, the store of E. S. Jaffray & Co., situate on Fifth avenue, between Madison and Washington streets, Chicago, was broken and entered by burglars, and that they stole and removed therefrom a considerable quantity of merchandise. In pursuance of an arrangement between some, or all the parties, this merchandise was taken about ten o'clock of the same night, in an express wagon procured for that purpose, to a building on State street, kept as

a pawnshop, by one Friedberg and wife. On the arrival of the wagon in front of this shop, and while the parties were in the act of removing the goods out of the wagon into the shop, the deceased came up to the wagon and was almost instantly thereafter shot, by some one at or near the wagon, receiving a mortal wound in the neck, from which he died in a few moments.

Inasmuch as in the view we have taken of this case it will have to be submitted to another jury, it would not be proper to express any opinion on its merits, or with respect to the effect of the testimony, except so far as may be necessary to present the grounds upon which the judgment of the court below is reversed.

As a part of the theory of the defence in the court below, it was claimed by the accused that, conceding he was one of the conspirators in the burglary and scheme for concealing and disposing of the stolen goods, still the evidence failed to show that he was present at the time of the homicide, or that he had in any manner advised or encouraged it, and that inasmuch as the plan or scheme of disposing of the stolen property adopted by the conspirators did not necessarily or probably involve the taking of life, and that as there was no evidence whatever tending to show that there was any tacit or express agreement between them to take life in any contingency in the prosecution of the enterprise, the accused could not be legally held responsible for the homicide in question.

To support this theory of the case the counsel for accused introduced and examined a number of witnesses, and while we express no opinion as to the weight of the evidence upon this branch of the case, it is sufficient to say that it can not be denied that the testimony of these witnesses did tend to prove that the accused was not present at the time of the homicide, and the evidence was sufficiently strong in that direction to entitle the accused to proper instructions embodying the law based upon that hypothesis. And with this

view counsel for plaintiff in error asked the court to give the jury this instruction, which is the 6th in the series prepared by counsel for plaintiff in error:

"If the jury believe, from the evidence, that the homicide charged in the indictment was committed by one of the several burglars, while engaged in secreting or disposing of property which said burglars had previously stolen, and that the killing was done to prevent the discovery and seizure of said property by the person killed, then, unless the jury believe from the evidence, beyond all reasonable doubt, that the defendant was present at the homicide, or sufficiently near to render aid and assistance to the perpetrator, and actually did aid, abet or encourage the person who committed the homicide; or unless the jury shall find that the defendant, before the homicide, counseled or advised the persons in charge of the said goods to oppose and resist whosoever should attempt to seize said goods, or interrupt them in the secreting or disposing of said goods, and that the killing of the deceased occurred in the course of such resistance as the defendant had so counseled and advised, then they ought to acquit the defendant."

The court refused to give this instruction, and all others embodying the same principle; but on the other hand gave instructions for the People which wholly ignored the principle therein announced. And this, we are of opinion, was error.

If, in point of fact, the accused was not present at the homicide, and had neither aided nor abetted, advised or encouraged its perpetration; nor had before its commission advised the persons in charge of the stolen goods to oppose and resist all persons who should attempt to seize the same, or interrupt them in secreting or disposing of them, as is assumed by the instruction, upon what principle could a conviction be sustained?

6—96 ILL.

It may be stated as a general proposition, that no one can be properly convicted of a crime to the commission of which he has never expressly or impliedly given his assent. To hold otherwise would be contrary to natural right, and shocking to every sense of justice and humanity.

Where the accused is present and commits a crime with his own hands, or aids and abets another in its commission, he may, in either case, be considered as expressly assenting thereto. So, where he has entered into a conspiracy with others to commit a felony or other crime, under such circumstances as will, when tested by experience, probably result in the unlawful taking of human life, he must be presumed to have understood the consequences which might reasonably be expected to flow from carrying into effect such unlawful combination, and also to have assented to the doing of whatever would reasonably or probably be necessary to accomplish the objects of the conspiracy, even to the taking of life. But further than this the law does not go. For if the accused in such case has not expressly assented to the commission of the crime, and the unlawful enterprise is not of such a character as will probably involve the necessity of taking life in carrying it into execution, there can be no implied assent, and consequently no criminal liability.

It will be perceived from what we have stated, that, assuming the facts mentioned in the 6th instruction to be true, and so we must regard them for the present purpose, it follows that the criminal liability of the accused in this case turns altogether upon whether the agreement between the conspirators to conceal and dispose of the stolen goods at the time, place, and in the manner proposed, constituted an enterprise of such dangerous character as to render the unlawful taking of life probably necessary in carrying it into execution.

We are of opinion, as already indicated, that it did not. When all the elements which enter into the question are considered, it would seem there is scarcely any room for doubt upon this question.

If Freeman, upon whose testimony the prosecution mainly rests, is to be believed, Friedberg and wife were fully advised of the proposed burglary, and knew, if the enterprise was successful, whatever was taken from the store would be brought to their pawn shop, on State street, for disposition. It was therefore reasonable to suppose that Friedberg and wife would be in readiness to receive without delay or hindrance whatever goods might be brought there, and that they would take every precaution to prevent surprise or danger. The place of deposit, a pawn shop, was least of all others calculated to attract notice or comment by reason of unloading goods in front of it. The night was very dark and altogether favorable to the execution of an enterprise of that kind. Indeed, when all the circumstances are considered in connection, they would seem to exclude all probability of force and violence becoming necessary in carrying into execution the arrangement agreed upon. This being so, it would be manifestly unjust to hold the accused liable for an act done by another which he had never in any sense, either expressly or impliedly, assented to.

The principle which underlies and controls cases of this character is the elementary and very familiar doctrine, applicable alike to crimes and mere civil injuries, that every person must be presumed to intend, and is accordingly held responsible for the probable consequences of his own acts or conduct. When, therefore, one enters into an agreement with others to do an unlawful act, he impliedly assents to the use of such means by his co-conspirators as is necessary, ordinary or usual in the accomplishment of an act of that character. But beyond this his implied liability can not be extended. So, if the unlawful act agreed to be done is dangerous or homicidal in its character, or if its accomplishment will necessarily or probably require the use of force and violence, which may result in the taking of life unlawfully, every party to such agreement will be held criminally liable for whatever

any of his co-conspirators may do in furtherance of the common design, whether he is present or not.

But where the unlawful act agreed to be done is not of a dangerous or homicidal character, and its accomplishment does not necessarily or probably require the use of force or violence, which may result in the taking of life unlawfully, no such criminal liability will attach merely from the fact of having been a party to such an agreement. The views here expressed are fully sustained by the following authorities: 1 Bish. Crim. L. (6th ed.) sec. 641; Hawkins' P. C. book 2, chap. 29, secs. 19, 20, 21; Foster 369, 370; *Regina* v. *Franz*, 2 F. & F. 580; *Regina* v. *Horsey*, 3 id. 287; *Regina* v. *Luck*, id. 443; Roscoe's Crim. Ev. 673, 655; *Regina* v. *Tyler*, 8 C. & P. 616; *Regina* v. *Lee et al.* F. &. F. 63; *Regina* v. *Turner et al.* 4 id. 339; *Rex* v. *Hawkins*, 3 C. & P. 392; *Watts* v. *The State*, 5 W. Va. 532; *Rex* v. *Howell*, 9 C. & P. 437.

We are aware of the fact that instructions have been approved by this and other courts, and that general statements are to be found in some of the cases which, upon first view, might be supposed to be in conflict with the views here announced, but upon a critical examination of the cases in which they occur, it will be found they differ materially in their facts from the case at bar.

It is believed that no well considered case of any respectable court of final resort can be found that is in conflict with the conclusion reached in this case, and even if such case could be found, we would not feel inclined to follow it. The propriety of giving or refusing an instruction must always be determined by the facts established in the particular case in which the instruction is asked. Hence it frequently happens that a particular instruction may be entirely proper in one case, and at the same time erroneous in another, in many respects just like it, by reason of some additional question or element entering into the latter which does not appear in the former.

For the error indicated the judgment of the court below

is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Judgment reversed.*

Mr. JUSTICE CRAIG, dissenting:

I can not concur with a majority of the court in reversing the judgment. This was an indictment against John Lamb, in the Criminal Court of Cook county, for the murder of Albert Race, a police officer of Chicago. On a trial the jury found the defendant guilty as charged in the indictment, and by their verdict directed the infliction of the death penalty. The court overruled a motion for a new trial and rendered judgment upon the verdict, to reverse which the defendant prayed for and obtained a writ of error, with an order that the writ be made a *supersedeas.* On the trial the court, on motion of the people, gave the following instructions to the jury:

"9.  The court instructs the jury, as a matter of law, that if several persons conspire to do an unlawful act, and death happens in the prosecution of the common object, all are alike guilty of the homicide. The act of one of them done in furtherance of the original design is, in consideration of law, the act of all. And he who advises or encourages another to do an illegal act is responsible for all the natural or probable consequences that may arise from its perpetration.

"10.  The court instructs the jury, as a matter of law, that if two or more persons conspire together to commit a criminal offence, all of them having the same object in view, and in the pursuit of that common object one of them does an act which is the cause of death under such circumstances that it amounts to murder in him, it is murder in the other or others also."

The court refused to give, on motion of defendant, instructions Nos. 6 and 8, as follows:

" 6. If the jury believe, from the evidence, that the homicide charged in the indictment was committed by one of the several burglars while engaged in secreting or disposing of property which said burglars had previously stolen, and that the killing was done to prevent the discovery and seizure of said property by the person killed, then, unless the jury believe from the evidence, beyond all reasonable doubt, that the defendant was present at the homicide, or sufficiently near to render aid and assistance to the perpetrator, and actually did aid, abet or encourage the person who committed the homicide; or unless the jury shall find that the defendant, before the homicide, counseled or advised the persons in charge of the said goods to oppose and resist whosoever should attempt to seize said goods, or interrupt them in the secreting or disposing of said goods, and that the killing of the deceased occurred in the course of such resistance as the defendant had so counseled and advised, then they ought to acquit the defendant."

" 8. If the jury believe, from the evidence, that the defendant and others were jointly engaged in the perpetration of the burglary and robbery of the store of Jaffray & Co. on the evening of the 4th of October, 1878, and after the robbery was completed the stolen property was loaded into a wagon, and two or more of the persons other than the defendant engaged in the robbery were placed in charge of the wagon and goods, to take the goods up State street, to the store of Friedberg, for sale or concealment, and the other persons engaged in the burglary then dispersed; and if the jury further find that the two persons so placed in charge of the wagon and goods proceeded to the said store of Friedberg with the wagon and goods, and while unloading the goods at said store were approached by a policeman, and thereupon one of the persons so in charge of the wagon and goods, upon being so approached by a policeman, fired upon and killed said policeman to prevent interruption in the disposition of said stolen goods, or to prevent arrest, then the defendant is

Mr. Justice CRAIG, dissenting.

not guilty in law of the said homicide, unless the jury find from the evidence that it was the understanding and intention of the defendant that the persons in charge of said goods should resist all interruption by force, and take life if necessary to render such resistance effectual."

The court also refused defendant's instruction No. 7, as asked, which was as follows:

" 7.   The jury are instructed that where one man goes out with intent to commit a felony, and in the pursuit of that unlawful purpose death ensues, it is murder; yet if several go out with a common intent to commit a felony, and death ensues by the act of one of the party, the rest will not necessarily be guilty of murder."

But added thereto the following, and gave it to the jury, as modified:

" But if the death occurs in prosecution of the common purpose, it would, if it was murder upon the part of the person causing the death, be murder upon the part of all the persons intending to commit the felony, and acting together in the common purpose, even though they took no part in the killing, nor assented to any arrangement having for its object the death of the deceased."

The decision of the court in giving the two instructions for the People, refusing the two asked by the defendant, and in modifying defendant's instruction No. 7, is relied upon as error, for which the judgment of the Criminal Court should be reversed.

It will be observed that the question presented by the instructions is one not entirely new in this court.   As early as 1854, in *Brennan* v. *The People*, 15 Ill. 511, which was an indictment for murder, it was held, where several persons conspire to commit a felony, and death happens in the prosecution of the common object, all are alike guilty of the homi-

cide; that the act of one is the act of all, although some are not present when the crime is committed. It was there said: "The prisoners may be guilty of murder, although they neither took part in the killing nor assented to any arrangement having for its object the death of Story. It is sufficient that they combined with those committing the deed to do an unlawful act, such as to beat or rob Story, and that he was killed in the attempt to execute the common purpose. If several persons conspire to do an unlawful act, and death happens in the prosecution of the common object, all are alike guilty of the homicide. The act of one of them done in furtherance of the original design is, in consideration of law, the act of all."

The doctrine of the *Brennan case* was recognized with approval in *Hanna* v. *The People*, 86 Ill. 243, where, in passing upon one of the instructions given for the People, it was said: "The instruction given in behalf of the People is not subject to the criticism made upon it. It states correctly, that if defendant and those indicted with him had a common design to do an unlawful act, then, in contemplation of law, whatever act one of them did in furtherance of the original design is the act of all, and all are equally guilty of whatever crime was committed." This was but a restatement of the law on this subject as declared by this court in *Brennan* v. *The People*.

In so far, then, as this court is concerned, the principle, at least, declared in the instructions seems to be settled, and while perhaps some decisions of other courts may be found in conflict with the rule as announced in this court, we are satisfied the rule here adopted is in harmony with the law as declared in the text books and the decisions of the ablest courts of the country.

In Wharton's American Criminal Law, vol. 2, sec. 998, in discussing this question the author says: "If a number of persons conspire together to do an unlawful act, and death happens in the prosecution of the design, it is murder in all."

If the unlawful act was a trespass, the murder, to affect all, must be done in the prosecution of the design. If the unlawful act be a felony, it will be murder in all, although the death happen collaterally or besides the principal design."

In Russell on Crimes, vol. 1, p. 35, it is said: "Where the principal goes beyond the term of the solicitation, yet, if in the event the felony committed was a probable consequence of what was ordered or advised, the person giving such orders or advice will be an accessory to the felony. As, if A advised B to rob C, and in robbing him B kills him, either upon resistance made, or to conceal the fact, or upon any other motive operating at the time of the robbery; or if A solicit B to burn the house of C, and B does it accordingly, and the flames take hold of the house of D, that likewise is burnt. In these cases A is accessory to B, both in the murder of C, and in the burning of the house of D."

In Chitty's Criminal Law, page 262, it is said: "If A command B to rob C, and he kill in the attempt; or to burn one house, and the fire destroys more, A will be accessory to the subsequent felonies."

To the same effect are the following authorities: 1 East P. C. 255; 1 Hale P. C. ch. 34, 433, 434; Stepp v. State, 11 Ind. 62.

Had it appeared that the killing of Race was not done in furtherance of or in prosecution of the original design to rob the store, or secrete the stolen goods, or was not a necessary or probable consequence likely to result from the conspiracy to rob and secrete the stolen goods, there might be more force in the position of counsel for defendant.

As was said in Commonwealth v. Campbell, 7 Allen, 541, "the rule of criminal responsibility for the acts of others is subject to the reasonable limitation, that the particular act of one of a party, for which his associates and confederates are to be held liable, must be shown to have been done for the furtherance or in prosecution of the common object and design for which they combined together."

But the evidence, when fairly considered, seems to establish beyond a doubt that the killing was a consequence likely to flow from the conspiracy, which was anticipated by the conspirators, and for which they prepared themselves before they attempted to rob the store. Previous to the robbery a navy revolver was obtained at Friedberg's. This was loaded, and, on the night of the burglary, given to the defendant. Three of the other parties were armed, and Freeman, who was stationed on the outside with Lamb to watch while the others entered the store, in his evidence, says that Lamb sent him into the store to see why those engaged in getting the goods were so slow, and when he ascended the stairs where they were, as he was not recognized, two revolvers were pointed at him. If those parties engaged in the burglary did not intend to shoot if molested, why were they armed with revolvers? For what purpose was the navy revolver given to the defendant, and why was it that when Freeman went into the store, and was not recognized, two revolvers were instantly pointed at him? There can be but one answer to these inquiries, and that is, that those engaged in the robbery intended, in case they were molested while robbing the store or delivering the goods at Friedberg's, to kill, if necessary, any person who might interfere in any manner with them. I think it is evident that the killing of Race was done in furtherance of the common design for which the parties combined together.

Nor do I entertain a doubt in regard to the law that should govern a case like the one under consideration. It is well settled that if two or more persons conspire to commit a larceny or a burglary, and in the commission of the common design, or in the attempt to secrete the stolen goods, an officer of the law or other person who may attempt the arrest of the offenders is murdered by one of the conspirators, all who enter into and participate in the common object for which they combined together will be guilty of murder, although

some of them may not be actually present when the murder was committed.

In addition to the authorities already cited sustaining this view, I will cite the following: 1 Bishop on Criminal Law, (5th ed.) sec. 636; *Miller* v. *The State*, 25 Wis. 384; *The State of Iowa* v. *Shelly*, 8 Clark, 477; *Moody* v. *State*, 6 Cold. 299.

I regard the decision of the court on the instructions to be in harmony with the well settled law of the country, and so far as the instructions are concerned no error appears in the record.

It is also urged that the court erred in refusing to require the State's attorney to call all the witnesses whose names appeared on the back of the indictment. It has never been the practice in this State, so far as I am advised, to require the State's attorney to call all the witnesses whose names may appear on the indictment, nor do we believe a rule of that character would be productive of any good results in the trial of criminal cases.

In the case of *Hurd* v. *The People*, 25 Mich. 416, cited by defendant's counsel, it was held that the prosecution is bound to put in evidence the whole *res gestæ*, but we do not understand that the decision goes so far as to require every witness whose name appears on the indictment to be called and sworn, or even every witness who may have witnessed the transaction, as it is expressly said: "Where the number present has been so great, the production of a part of them might be dispensed with, after so many had been sworn as to lead to the inference that the rest would be merely cumulative, and where there is no ground to suspect an intent to conceal a part of the transaction." The English cases, *R.* v. *Holden*, 8 C. & P. 606, *R.* v. *Chapman*, id. 559, and *R.* v. *Strenner*, 1 C. & K. 650, do not, in our judgment, sustain the position announced, nor do they establish any definite rule on the subject.

On the other hand, in *Rex* v. *Simmons*, 1 Carr. & Payne, 84, it was held that the prosecution was not bound to call all the witnesses whose names appeared in the indictment.

And in *Rex* v. *Boddle*, 6 Carr. & Payne, 186, it was held to be in the discretion of the judge whether he would require the prosecution to call a witness whose name was on the indictment, in order that he might be examined by the defence.

The same principle was announced in *Regina* v. *Woodhead*, 2 C. & K. 520; *Regina* v. *Carrody*, 1 F. & T. 79.

It does not appear that the prosecution attempted to conceal any fact which had a bearing on the case from the jury, and the fact that the State's attorney failed to call all the witnesses who were present when the shooting was done, or whose names were on the indictment, did not prejudice the rights of. the defendant, as it was his undoubted right to call and examine the witnesses the State's attorney refused to call, and such others as he saw proper.

It is also urged that the testimony is not sufficient to establish the guilt of John Lamb, the defendant. The sufficiency of the evidence was a question purely for the jury, and while this court has the power to interfere, that power should not be exercised unless it is apparent that injustice has been done.

In *Peri* v. *The People*, which was an indictment for murder, in passing upon the question whether the evidence supported the verdict, it was said that the appellate court is reluctant to reverse because a verdict is not supported by the evidence, unless it seems to be clearly wrong. Other cases might be cited to the same effect if authority was needed, but the rule is so well established in this court that it seems useless to cite authority in its support. The jury, under the law, are the sole judges of the credibility of the witnesses and of the weight to be given to the evidence of each witness who testifies in the case, and, in a criminal case like this they are the judges of the law. Under such circumstances, where there has been no misconduct of the jurors, and no error of law appears on the trial, and the jury have not been actuated by passion, prejudice or corruption, it would seem like invading the province of the jury should the court interfere on the

ground alone, in the opinion of the court, that the evidence was insufficient to sustain the verdict.   If the witnesses who testified on behalf of the people on the trial of the cause were worthy of credit, and their evidence was reliable, the evidence shows that the defendant, John Lamb, and George Freeman, Philo Durphey, Charles Dennis, James Griffin and James Driscol, entered into a conspiracy to rob the store of Jaffray & Co., in Chicago, and deliver the stolen goods to one Lesser Friedberg, a pawnbroker at 474 State street; that the store was entered on the night of October 4, 1878, the goods taken, and while being delivered at Friedberg's place by two of the burglars, Albert Race, a policeman of the city, was shot and murdered by one of the conspirators, while in the discharge of his duty as a police officer of the city.

On behalf of the defendant it is contended, first, that there was no credible and sufficient evidence to implicate him in the burglary of Jaffray's store, or in the removal and disposition of the stolen goods; second, that the evidence fails to show that defendant, Lamb, fired the fatal shot by which deceased was slain, or was present aiding and abetting the homicide.

George Freeman was introduced as a witness in behalf of the people, and it is conceded that his evidence, if entitled to credit, was sufficient to convict Lamb of the burglary, and that it also showed that Lamb followed the wagon containing the stolen goods to the pawnbroker's shop, and was present when the murder was committed, and may have fired the fatal shot.   It is true, Freeman was an accomplice, and while his connection with the crime was a fact for the consideration of the jury in determining what weight should be given to his evidence, he was, nevertheless, a competent witness for the people, and it was the province of the jury, upon weighing the probability of his testimony, to convict upon his evidence alone, if they thought him worthy of belief.   *Gray* v. *The People*, 26 Ill. 344; *Earll* v. *The People*, 73 id. 334.

In reference to some of the important facts, however, Free-

man was corroborated by other witnesses. He testified that he met Lamb and the other burglars on the evening of the 3d on the North side, where they commenced making the arrangement for the burglary, which was consummated during the next day and evening, the last meeting being at Ott's saloon, late in the afternoon.

Upon this branch of the case Schaack and Whalen, two policemen, testified that they met Lamb in company with the other burglars, or some of them, at the north side of Kinzie street bridge, on the evening of October 3d; and Peter Ott testified that on the afternoon of October 4th, about half-past five, Lamb, in company with the other burglars, came in his saloon on the North side, at the corner of Kinzie and Market streets; they all drank together, talked and went outside; again came in and spoke low to each other near the window.

The testimony of this last witness fully corroborates Freeman as to the meeting of the burglars a short time before the store was entered and the burglary committed.

Again, William Harmon, another witness for the people, testified that he saw the defendant on the wagon on the night of October 4th, near Friedberg' pawn shop; he did not see the man who fired the shot, but saw the flash and heard the shot, and after the shot saw a man jump off the wagon and run across the street. This witness may have been mistaken, owing to the darkness of the night, it is true, but he gave it as his opinion that defendant was one of the men he saw on the wagon when the shot was fired, and his evidence at least tends to corroborate Freeman.

Freeman, it will be remembered, testified that when the officer came up he ran across the street, leaving Dennis in the wagon and Lamb and Durphey near by; that after the shot another person ran from the wagon across the street. In this he is substantially corroborated by John Hemmelman, who testified that he was within seventy-five feet of Race when he was shot; that one person ran across the street before the shooting was done, and another immediately thereafter. He

also saw a man near the wagon, when the shot was fired, whom he described, and the man he describes was doubtless Lamb.

I place no reliance on the evidence of Josephine Chapman, who testified that she saw the defendant fire the shot that killed Race, because she was so completely impeached that her evidence was not entitled to credit.

Aside from her evidence, after giving full force and effect to the testimony of the witnesses for defendant tending to prove that he did not follow the stolen goods to the pawn-broker's shop, and also the testimony tending to prove an alibi at the hour the murder was committed, there was still proof sufficient before the jury to authorize the verdict if the evidence of the people was entitled to credit, which of course was a question purely for the jury.

Had the record disclosed any misconduct of the jurors on the trial, or that the court had erred in its rulings on questions of law, I would not hesitate in the least to reverse the judgment and remand for another trial, but such is not the case. On the other hand, it is manifest, from a careful inspection of the whole record, that the defendant has had a fair and impartial trial before a jury of twelve impartial men of his own selection. He has been found guilty of a high crime, and in obedience to the mandates of the law, he ought, in my judgment, to suffer the penalty.

WALKER and SHELDON, JJ.: We concur with this dissenting opinion.