Davis, J.
It was charged in the indictment that the plaintiff in error broke into a dwelling-house at night with intent to take and carry away personal property which was in the dwelling; and that while in the perpetration of such burglary, he, the plaintiff in error, shot and killed one Daniel E. Davis. The plaintiff in error, whose real name is Castor, when first arraigned on the indictment pleaded not guilty; but several weeks later, after first being cautioned by the court, and with the consent and advice of his counsel, • withdrew his plea of not guilty and pleaded guilty as charged in the indictment. Thereupon the court proceeded, as required by the statute, to hear testimony to determine the degree of the crime, at the conclusion of which the court found that the degree of the crime to which Castor had pleaded guilty is murder in the first degree, and gave sentence accordingly. This judgment was af *66 firmed by the circuit court, and Castor now prosecutes this proceeding in error to reverse the judgments of the circuit court and the court of common pleas.
Castor has had a fair trial for his life, unless there, is error in the conclusion of law reached by the courts below, that upon the facts of the case he killed the deceased “in perpetrating or attempting to perpetrate” a burglary, within the meaning of Section 6808, Revised Statutes.
His plea of guilty conclusively establishes every essential fact in the case against him, and leaves open only the question as to the degree of the crime. Whether he fired the fatal shot or not, he was guilty of the crime, because he and his confederate had engaged in a common purpose, that of breaking into the house and carrying away the property of the owner, and necessarily they seem to have contemplated the exigency of opposition or attempted arrest when they took with them the revolver which was afterwards found beside deceased, for the revolver would be of no use in breaking into the house and would only prove serviceable in the exigency named. See Stephens v. State, 42 Ohio St., 150, 153.
His counsel, nevertheless, argue that as matter of fact and of law the killing was not “in the perpetration of a burglary”; and they claim that inasmuch as the indictment charges murder in the first degree, and murder in the first degree of one kind only, that of purposely taking human life, while in the perpetration of a burglary,- they are entitled to have “not only a reversal of the judgments of the courts below, but a decree finally and completely discharging the defendant under *67 this indictment.” If this contention of counsel should prevail it would defeat the purpose of the statute and destroy its efficacy, as is clearly demonstrated by the Supreme Court of Indiana in the extended quotation which we here make:
“In this case, that the burglary and homicide were both committed, there can be no reasonable doubt; but it is insisted that the homicide was not committed ‘in the perpetration’ of the burglary; and, therefore, being unconnected with the burglary, the facts do not warrant a conviction in a higher degree than manslaughter, if, indeed, they do not excuse the prisoner entirely; that the burglary was consummated as soon as the burglarious entry was 'made with the felonious intent as charged; and that, as the homicide was committed after the entry, it was not, therefore, committed ‘in the perpetration’ of the burglary. If this construction were to be given to the statute, it would be quite impracticable to ever convict for a murder committed in the perpetration of any of the felonies mentioned in this section. The intention of the Legislature, in enacting the section, was, doubtless, to class certain homicides in the highest degree of murder without containing the ingredient of premeditation, malice or intention, which otherwise could not possibly be of a higher degree than manslaughter, and, in many cases, might not amount to criminal homicide at all. In this case,' take away the elements of burglary which surround it, and the prisoner might plausibly contend that he had committed nothing more than excusable homicide; for it appears that the deceased shot at him first, and thus put his life in immediate jeopardy. It could not be higher than man *68 slaughter, at most; and in such cases it might be accidental, and then, if held not to be ‘in the perpetration’ of the burglary, would be excusable. If the charge was murder committed ‘in the perpetration’ of a robbery, as soon as the accused had forcibly and feloniously, or by violence and putting in fear, taken from the person of another any article of value, the robbery would be consummated; yet, if immediately afterwards, in the struggle to release himself and escape, he had killed his victim, the degree of the homicide, unconnected with the robbery, would be no higher than manslaughter. So, if the charge was murder committed ‘in the perpetration’ of arson, as soon as the criminal had willfully and maliciously set fire to a dwelling house, the arson would be accomplished, and he could flee; yet it might be that some human being was in the building at the time, and hours afterwards was consumed in the flames. In such a case, the homicide, if held not to be committed ‘in the perpetration’ of the arson, would be merely manslaughter, being- a homicide perpetrated in the commission of an unlawful act, without malice,, express or implied, although the felon had committed two crimes of the most shocking character. True, the homicide might be murder in such a state of facts, when it was committed with premeditation, malice, and intention, and the arson was merely the means of accomplishing the crime. And if the charge was murder committed ‘in the perpetration’ of a rape, as soon as the felon had unlawfully and forcibly, and against the consent of the woman, effected sexual penetration, the crime by statute would be complete; yet, if he still persisted in his nefarious object, until he had *69 accomplished the natural purpose of the sexual act, and in such persistence killed his victim, if it was held not to be ‘in the perpetration’ of .the rape, he would be guilty of only the lowest degree of homicide, although he had committed the foulest and also highest crime known against nature.
• “Although we must construe criminal statutes strictly, adhere closely to the definition of crimes, and interpret technical words according to their fixed meaning, yet we can not give to the section under consideration the construction contended for by the appellant. In our opinion, where the homicide is committed within the res gestae of the felony charged, it is committed in the perpetration of, or attempt to perpetrate, the felony, within the meaning of the statute; and, being convinced in this case that the burglary charged was committed, and that the homicide was committed within the res gestae of the burglary, we must hold that it was committed in the perpetration of the burglary, within the true intent and fair meaning of the statute. It seems to us that such a construction is safe to the state and the citizen, and the only one by which the intention of the Legislature can be practically carried into effect. And we think, according to this view, that the evidence in this case fairly warrants the conclusion, beyond a reasonable doubt, that the homicide alleged was committed ‘in the perpetration’ of the burglary, as charged in the indictment.” Bissot v. State, 53 Ind., 408.
The rule as to the strict construction of penal statutes does not require us to go so far as to defeat the purpose of the statute by a technical application of the rule. United States v. Hart- *70 well, 73 U. S., 385, 395, 396; State v. Brown, 7 Ore., 186, 209; Bissot v. State, supra.
In substance, the argument in this case is that the perpetration of the burglary was complete when the house was entered, or at least while the burglars were within the house, and that as they carried nothing away in their flight the crime of burglary was complete when they left the house. The body of Officer Davis was found twenty-five or thirty feet from the house and on another lot. Therefore, it is argued, the killing was not in the perpetration of a burglary.
We will pause here to emphasize a distinction which will be apparent to any one on reflection. It is the distinction between the definition of a burglary and a statement of the circumstances which may have occurred “in the perpetration” of a burglary. The former is invariable. The latter varies with each case. The definition of a burglary is the breaking into a house in the night season, with intent to commit a felony; and if a house be so entered it is a burglary whether the felony be executed or not, and regardless of the kind of felony intended, or the manner of its execution, or the manner in which the felony may be frustrated, or the value of property taken, or any other circumstance which is not intrinsic. On the other hand, while the circumstances which differentiate the crime may be a small part of the transaction, and must always be the same, the things which occur “in the perpetration” of a crime change with every case, and may be numerous.
For example, when a burglary has been planned, in order to carry it out, or, in other words, to perpetrate it, the burglar must go to *71 the building, he must break and enter it; he may effect his purpose or attempt it, and he must come away; for the very nature of the transaction implies that the burglar will not remain in the building. An infinite variety of things may happen in carrying out the crime. The perpetrator may kill a man while going to or trying to enter the building, he may kill a man after he has broken and entered the house, and he may kill a man while trying to escape, either in the house or outside of it. Can any sound reason be suggested why the killing in any one of these instances might be in the perpetration of or attempt to perpetrate a burglary, and not so in the others? The crime of murder in the first degree as defined by the statute (Section 6808, Revised Statutes) certainly can not by any reasonable construction be confined to the moment of breaking and entering the house, the crucial point of the definition of burglary; and it should be noted here again that it is not burglary which we are to define in this case, but murder in the first degree.
Let us suppose a case. Two confederates intending to break and enter a dwelling for a felonious purpose are met by the owner at the door or window which they are forcing and they kill him. Would anybody question that such a killing was in the perpetration, or attempt to perpetrate, a burglary? Surely not. Then let us go farther back in the order of time. Suppose that while these confederates are watching the house and waiting for the opportune time, they see the owner of the dwelling come out with a lantern and go across the road to his barn, and they there set upon him and inflict injuries from which he dies, but they *72 take no money or property. They afterwards go across the road towards the house, and, getting inside the yard, are frightened by somebody approaching and hurry away. Would that be murder in an attempt to commit a burglary? It was argued that it was not; but the Supreme Court of Pennsylvania held that it was. Commonwealth v. Eagan, 190 Pa. St., 10.
Suppose another case. The confederates so far succeed as- to break and enter the building. A technical burglary has been completed; but after-wards and while yet in the building they shoot and kill somebody. Is that a killing “in the perpetration” of a burglary within the meaning of the statute defining murder in the first degree? It was vigorously contended in the Court of Appeals of New York and also in the Supreme Court of Indiana, that such a killing is not murder in the first degree, but a killing after the crime of burglary had been completed. Both courts hold that the crime in such case is murder in the first degree, notwithstanding that the killing and the breaking and entering are not coincident. Dolan v. People, 64 N. Y., 485; Bissot v. State, 53 Ind., 408.
Now, if the taking of life before reaching the building, and also after breaking and entering the building and before leaving it, is a taking of life in the perpetration, or attempt to perpetrate, a burglary, at what point after the breaking and entering is the line of distinction to be drawn? At what point can it be drawn, short of the absolute completion or abandonment of the- whole enterprise? It seems to us that logically there can be no such intermediate point; and we know of *73 no case which holds otherwise. The case of Lamb v. People, 96 Ill., 73, cited by counsel for plaintiff in error is not pertinent here. There the burglars got away with the plunder. They were in undisturbed possession of the goods. Lamb left the party and some time thereafter the others were detected in unloading the goods at a pawnbroker’s. Then the shooting occurred.
Take another case. Three men entered a pawnshop, locked the door behind them, beat the proprietor into insensibility, took from the safe certain articles of value and escaped through back windows. They were pursued by a constable who chased them for the distance of four blocks and across two streets. They then turned and fired at the constable and a pistol ball missing him struck a tree and glanced off, killing a boy. The men were indicted for murder while engaged in committing a robbery. A conviction of murder in the first degree resulted as to one of the defendants; and the Supreme Court, in State v. Brown, 7 Ore., 186, said:
' “The defendant admits that he committed a robbery in the pawnshop of O’Shea, but insists that the crime was completed when he and his co-defendants forcibly seized the property described ■ in the indictment, and, being completed, he denies that the killing of Joseph was done in the commission of the robbery. We do not assent to the correctness of this conclusion. * * * When a person takes with force and violence the goods of another from his person or presence and against his will, he has committed robbery * * * but it does riot necessarily complete the crime. It constitutes robbery so far as to render the per *74 petrator■ liable to conviction for it; but the act of robbery itself may be prolonged beyond the time when that liability is fixed: When Brown and his co-defendants took the property by force * * * they committed the crime of robbery so far as to render themselves liable to punishment for it, but the robbery in contemplation of law was not completed until the taking and carrying away was ended. * * * And while anything remains to be done by the robbers to secure complete control over the property taken, the robbery is incomplete. The act of taking and carrying away in the case of Brown and his co-defendants commenced when the seizure was made in the pawnshop of O’Shea, and continued until they had unmolested dominion over the property which they had taken. When they first acquired that control .the robbery was ended and not before” (pp. 208, 209).
Again, in California several conspired to perpetrate a robbery. They went to the place armed with pistols and rifles. Two of the party entered the store, and, with drawn pistols, made those in the room lie down and be tied. The robbery was then committed"; but while it was being committed one of the robbers, Vasquez, was watching outside. Seeing two men standing in the door of a stable back of the store, Vasquez fired upon them with his rifle and one of the men was thereby shot and killed. Vasquez claimed that it was agreed that no one should be killed or hurt and denied that he fired the shot that killed the deceased. He was found guilty of murder in the first degree and sentenced to be hung. He appealed from the judgment and from an order *75 denying a new trial. The trial court charged the jury as follows: “It is no defense to a party .associated with others in, and engaged in a robbery, that he did not intend or propose to take life in its perpetration, or that he forbade his associates to kill, or that he disapproved or regretted that any person was thus slain by his associates. If the homicide in question was committed by one of his associates engaged in the robbery, in furtherance of their common purpose to rob, he is as accountable as though his own hand had intentionally given the fatal blow, and is guilty of murder in the first degree.” The Supreme Court said in regard to this charge: “The instruction is in entire accordance with the provision of the statute, which declares that murder which is committed in the perpetration of, or attempt to perpetrate robbery, is murder in the first degree; and no argument is required to sustain it, as a clear and correct statement of the law on that point”; and the judgment was affirmed (People v. Vasquez, 49 Cal., 560). It should be noted in this case that neither Va.squez nor the deceased, at the time of the shooting, was in the building in which the robbery took place; and that the shooting took place after the store had been entered and the people therein had been put in fear and had their hands tied behind them. The entire contents of the store were from that moment completely within the control of the robbers; and the technical definition of a robbery was fulfilled. But the murder was committed after that and outside of the building while the principals in the robbery were within.
*76 Finally, as we regard it, the principle which is involyed here was decided in the case of Loveland v. State, noted in 70 Ohio St., 514, but unreported. Loveland, with others, entered into a design to rob one George Geyer. They went to Geyer’s house, Loveland remaining Outside in a buggy and about fifty yards from the house, his confederates going into the house and accomplishing the robbery. Afterwards, and before the robbers left the house, an altercation ensued and Geyer was shot and killed.. The indictment charged murder in the perpetration of a robbery. Loveland was convicted of murder in the first degree, and the judgment was affirmed by the circuit court; and by petition in error in this court, among other errors, error in the charge of the court was assigned. The following are the paragraphs of the charge to the jury which are pertinent to’ this case:
“If, in this case, the other elements of crime being present, the defendant, together with others, conspired together to commit a robbery, and the others entered the residence of the deceased, George Geyer, in carrying out a common purpose to rob George Geyer, and the defendant stood guard outside, and in the course of the perpetration of the robbery, either one of them shot and killed George Geyer, the defendant would be equally guilty with the one firing the shot, if such use of the weapon and such killing might reasonably have been contemplated as a natural and probable consequence of the common purpose to commit the crime of robbery, whether such killing was part of the prearranged plan before they went to the house of George Geyer or not, *77 and even if the defendant himself carried no deadly weapon.
. “If the evidence in this case should show or satisfy you that the said George Geyer was killed after the money was obtained from him, I charge you, as a matter of law, that if the said George Geyer was killed immediately after such money was obtained and while the conspirators or any of them were still in the immediate presence of the said George Geyer, and before they had withdrawn from the house, or from the immediate presence of the said George Geyer, and while said conspirators or any of them were still insisting and demanding that the deceased produce more money, then, as a matter of law, the killing was done in the perpetration of the robbery, because it was within the res gestae of the crime.”
This court found no error in the record, affirmed the judgments of the courts below, and Loveland was executed. All the judges sitting in the case concurred in the judgment of affirmance, except Crew, J. Summers, J., having sat in the case in the circuit court, did not sit in'this court. The only difference between that case and this is that in the Loveland case the shooting was in the house. On the theory of counsel for plaintiff in error, if the murder had occurred on the front doorstep, when the robbers were leaving, it would not be murder in the first degree. But we confess that we are unable to understand why the line of distinction should be drawn at the threshold of the house, if the shooting within the house, after the robbery was technically complete is murder in the first degree.
*78 Thus it appears that in all these cases which we have reviewed, cases of killing before, during and after the technical perfection of the collateral crime, the courts practically concur in the view expressed by the Court of Appeals of New York, that, “If, while there engaged in securing his plunder, or in any of the acts immediately connected with his crime, he kills any one resisting him, he is guilty of murder under the statute” (Dolan v. People, supra); and by the Supreme Court of Indiana as follows: “In our opinion, when the homicide is committed within the res gestae of the felony charged, it is committed in the perpetration of, or attempt to perpetrate, the felony, within the meaning of the statute” (Bissot v. State, supra). For the reasons which we have endeavored to make clear, we believe that this construction of the statute is not only reasonable, consistent, conservative and just, but" that it exactly conforms to the legislative intent as expressed.
Again, if Castor had been indicted for murder with delibefate and premeditated malice, upon the facts as conceded here he would have been found guilty of murder in the first degree. This is the doctrine of a large number of cases in this country and England. See cases cited in 21 Am. & Eng. Ency. Law, 2d Ed., 141, n. 2. So that the defense here made is purely technical and tends to defeat substantial justice.
The judgment of the circuit court is

Affirmed.

Shaucic, C. J., Summers and Spear, ' J J., concur.